# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| DISH NETWORK L.L.C., | § | |
| | § | |
| Plaintiff, | § | Civil Action No. 4:17-cv-01618 |
| | § | |
| v. | § | |
| | § | |
| SHAHJAHAN DURRANI, d/b/a ZemTV, | § | |
| and ADAM LACKMAN, d/b/a | § | |
| www.tvaddons.ag, www.tvaddons.org, | § | |
| www.streamingboxes.com, and | § | |
| www.offshoregit.com | § | |
| | § | |
| Defendants. | § | |

**Plaintiff DISH Network L.L.C.'s Opposition to Defendants' Motion to Dismiss**

## Table of Contents

I.      Summary ..................................................................................................................1

II.     Issue Presented.......................................................................................................1

III.    Standard of Review .................................................................................................1

IV.     The Court has Personal Jurisdiction Over Defendants in Accordance with Rule 4(k)(2) of the Federal Rules of Civil Procedure. ...............................................................2

     A.      DISH's copyright claims arise under federal law.  ...............................................2

     B.      Defendants are not subject to the general jurisdiction of any state.  .......................3

     C.      Exercising jurisdiction is consistent with Constitutional due process.  ..................4

          1.      Defendants operated a joint venture that targeted and interacted with the United States.  ...........................................................................................5

          2.      Defendants used TV Addons and Streamingboxes to enter into contracts with residents of the United States which involved knowing and repeated transmissions of data.  ...............................................................................6

          3.      TV Addons and Streamingboxes were highly interactive websites that permitted the exchange of information of a commercial nature.  ..............8

          4.      Defendants entered into contracts with nine United States service providers that facilitated Defendants' copyright infringement.  ...............11

          5.      Defendants introduced ZemTV into the stream of commerce with the expectation that it would be used by residents of the United States.  .......14

          6.      The exercise of jurisdiction is appropriate under the *Calder* effects test. 16

     D.      DISH's claims arise from Defendants' minimum contacts with the United States.............................................................................................................18

     E.      The exercise of personal jurisdiction over Defendants is fair and reasonable. .....18

V.      Conclusion ...........................................................................................................19

## Table of Authorities

**Cases**

*Adams v. Unione Mediterranea di Sicurta*,
    364 F.3d 646 (5th Cir. 2004) ................................................................................... 1-4, 19

*AllChem Performance Prods., Inc. v. Aqualine Warehouse, LLC*,
    878 F. Supp. 2d 779 (S.D. Tex. 2012) .............................................................................16

*Am. Auto. Ass'n., Inc. v. Darba Enters. Inc.*,
    No. C09-00510 SI, 2009 WL 1066506 (N.D. Cal. Apr. 21, 2009) ...................................8

*Arista Records, Inc. v. Sakfield Holding Co.*,
    314 F. Supp. 2d 27 (D.D.C. 2004) ...................................................................................8

*BNSF Ry. Co. v. Bhd. Of Maint. Of Way Employees*,
    550 F.3d 418 (5th Cir. 2008) ...................................................................... 2, 4, 7-8, 11

*Bright Imperial Ltd. v. RT Mediasolutions, S.R.O.*,
    No. 1:11-cv-935-LO-TRJ, 2012 WL 1831536 (E.D. Va. May 18, 2012) ........................9

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ......................................................................................................4, 8

*Calder v. Jones*,
    465 U.S. 783 (1984) .................................................................................................. 16-18

*Cent. Freight Lines, Inc. v. APA Transp. Corp.*,
    322 F.3d 376 (5th Cir. 2003) ...........................................................................................1

*CompuServe, Inc. v. Patterson*,
    89 F.3d 1257 (6th Cir. 1996) ...................................................................................... 6-7

*Exxon Mobil Corp. v. Exxonmobil for Expt., Impt. & Trade Ltd.*,
    No. 3:12-cv-01122-P, 2013 WL 12124587 (N.D. Tex. Jan. 25, 2013) .......... 11-12, 15, 19

*Gilbert v. Donahue*,
    751 F.3d 303 (5th Cir. 2014) ...........................................................................................2

*Goes Int'l, AB v. Dodur Ltd.*,
    No. 3:14-cv-05666-LB, 2015 WL 5043296 (N.D. Cal. Aug. 26, 2015) .........................14

*Guidry v. U.S. Tobacco Co.*,
    188 F.3d 619 (5th Cir. 1999) .......................................................................................2, 16

*Heroes, Inc. v. Heroes Foundation*,
    958 F. Supp. 1 (D.D.C. 1996) ........................................................11

*Jones v. Dirty World Entm't Recordings, LLC*,
    766 F. Supp. 2d 828 (E.D. Ky. 2011) .............................................9

*Luv n' Care v. Insta-Mix, Inc.*,
    438 F.3d 465 (5th Cir. 2006) ..........................................1-2, 14, 16

*Mashantucket Pequot Tribe v. Redican*,
    309 F. Supp. 2d 309 (D. Conn. 2004) ...........................................10

*McFadin v. Gerber*,
    587 F.3d 753 (5th Cir. 2009) .........................................................18

*MetroplexCore, L.L.C. v. Parsons Transp., Inc.*,
    743 F.3d 964 (5th Cir. 2014) ...........................................................5

*Mink v. AAAA Dev. LLC*,
    190 F.3d 333 (5th Cir. 1999) .....................................................5-6, 8

*Nagravision SA v. Gotech Int'l Tech. Ltd.*,
    ___ F.3d ___, 2018 WL 746538 (5th Cir. Feb. 7, 2018) .........................1, 3, 19

*Nolan v. Boeing Co.*,
    736 F. Supp. 120 (E.D. La. 1990) ..................................................6

*Quick Techs., Inc. v. Sage Grp. PLC*,
    313 F.3d 338 (5th Cir. 2002) ...........................................................2

*Revel v. Lidov*,
    317 F.3d 467 (5th Cir. 2002) .................................................... 17-18

*Rimkus Consulting Grp., Inc. v. Cammarata*,
    688 F. Supp. 2d 598 (S.D. Tex. 2010) ............................... 4, 7-8, 11

*Tempur-Pedic Int'l, Inc. v. Go Satellite Inc.*,
    758 F. Supp. 2d 366 (N.D. Tex. 2010) ...................................... 6-7

*Thompson v. Chrysler Motors Corp.*,
    755 F.2d 1162 (5th Cir. 1985) .........................................................2

*Trois v. Apple Tree Auction Ctr., Inc.*,
    No. 16-51414, 2018 WL 706517 (5th Cir. Feb. 5, 2018) ................................11

*Walden v. Fiore*,
     134 S. Ct. 1115 (2014) ................................................................ 16-18

*Walker v. Williamson*,
     131 F. Supp. 3d 580 (S.D. Miss. 2015) .............................................6

*Was. Shoe Co. v. A-z Sporting Goods Inc.*,
     704 F.3d 668 (9th Cir. 2012) ...........................................................16

*World Tanker Carriers Corp. v. M/V Ya Mawlaya*,
     99 F.3d 717 (5th Cir. 1996) ...............................................................4

*World-Wide Volkswagen Corp. v. Woodson*,
     444 U.S. 286 (1980) .......................................................................4, 7

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,
     952 F. Supp. 1119 (W.D. Pa. 1997)) ...............................................5-6

## Statutes & Rules

17 U.S.C. § 101 ...................................................................................2

17 U.S.C. § 501 ...............................................................................2-3

Fed. R. Civ. P. 4(k)(2) ...........................................1-4, 8, 11-12, 14, 16, 18-19

Fed. R. Civ. P. 12(b)(2) .......................................................................1

Fed. R. Civ. P. 37(e) ...........................................................2, 4, 7-8, 11

Tex. Bus. Orgs. Code Ann. § 152.051(b) ............................................5

## Secondary Sources

59 AM. JUR. PROOF OF FACTS 3D
     *Proof of Personal Jurisdiction in the Internet Age* § 13 (2017) ...................10

## I.      Summary

Plaintiff DISH Network L.L.C. ("DISH") sued Defendants Adam Lackman ("Lackman") and Shahjahan Durrani ("Durrani," and collectively with Lackman, "Defendants") for direct and secondary copyright infringement.  Defendants each had roles in the unlawful retransmission of pay-television channels and programming exclusively licensed to DISH, which is the fourth largest pay-television provider in the United States.  DISH alleged personal jurisdiction based upon minimum contacts with Texas, and alternatively under Fed. R. Civ. P. 4(k)(2) based upon the Defendants being foreign defendants with minimum contacts with the United States as a whole. (Dkt. 10, First Am. Compl. ¶ 6.)

Defendants' moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) claiming only that they lacked sufficient contacts with the State of Texas.  (*See* Dkt. 24, Defs.' Mot. to Dismiss 3-7.)  But Defendants did not address the alternative basis for jurisdiction under Rule 4(k)(2) and because jurisdiction is more straightforward under Rule 4(k)(2) this court may find personal jurisdiction on that basis and need not address the state contacts issue.  *Adams v. Unione Mediterranea Di Scurta*, 364 F.3d 646, 652 (5th Cir. 2004) ("Because we conclude that our exercise of jurisdiction is clearer and more straightforward under Rule 4(k)(2) than under Louisiana law, we affirm the district court's jurisdictional ruling on this alternate basis."); *Nagravision SA v. Gotech Int'l Tech. Ltd.*, --- F.3d ---, 2018 WL 746538 at *3 (5th Cir. Feb. 7, 2018) (affirming personal jurisdiction over foreign defendants in the Southern District of Texas under Rule 4(k)(2) and explaining that the defendant bears the evidentiary burden of negating jurisdiction under that subsection).

## II.      Issue Presented

Does the Court have personal jurisdiction over Defendants in accordance with Rule 4(k)(2) of the Federal Rules of Civil Procedure?

## III.      Standard of Review

A plaintiff need only make a prima facie showing of personal jurisdiction.  *Cent. Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003); *see also Luv n' Care v. Insta-*

*Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (the plaintiff need not establish personal jurisdiction by a preponderance of the evidence).  The court must accept the plaintiff's allegations as true and also resolve all factual disputes in the plaintiff's favor.  *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 625 (5th Cir. 1999).  "[T]he court may consider the contents of the record before [it]…including 'affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery'" to help it resolve the jurisdictional issue.  *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 344 (5th Cir. 2002) (quoting *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)).

It is within the sound discretion of the court to draw a negative inference from a party's failure to produce evidence within its possession or control if the purpose of that party's failure to produce was to "conceal adverse facts."  *See BNSF Ry. Co. v. Bhd. of Maint. of Way Emps.*, 550 F.3d 418, 424 (5th Cir. 2008); Fed. R. Civ. P. 37(e).

## IV.   The Court has Personal Jurisdiction Over Defendants in Accordance with Rule 4(k)(2) of the Federal Rules of Civil Procedure.

Courts apply Federal Rule of Civil Procedure 4(k)(2) in cases where the plaintiff's claim(s) (1) arise under federal law, (2) involve defendants who are not subject to the general jurisdiction of any state, and (3) where exercising jurisdiction would be consistent with Constitutional due process.  Fed. R. Civ. P. 4(k)(2); *Adams*, 364 F.3d at 650 (Rule 4(k)(2) "provides for service of process and personal jurisdiction in any district court for cases arising under federal law where the defendant has contacts with the United States as a whole sufficient to satisfy due process concerns and the defendant is not subject to jurisdiction in any particular state.").

### A.   DISH's copyright claims arise under federal law.

"A claim arises under federal law when the plaintiff's statement of his own cause of action shows that it is based upon federal law or the Constitution."  *Gilbert v. Donahue*, 751 F.3d 303, 311 (5th Cir. 2014).  DISH asserts claims under the Copyright Act, 17 U.S.C. § 101 *et seq*.  (Dkt. 10 ¶ 5.)  DISH alleges claims of direct copyright infringement against Durrani and claims of contributory, inducing, and vicarious copyright infringement against Lackman under 17 U.S.C. §

501. (*Id.* ¶¶ 17-41.)  The first element for a finding of personal jurisdiction under Rule 4(K)(2) is satisfied because DISH's copyright claims arise under Federal Law.

### B.     Defendants are not subject to the general jurisdiction of any state.

A plaintiff "ha[s] the initial burden to plead and prove the requisite contacts with the United States and plead Rule 4(k)(2)'s applicability (though no need for 'magic words'), but it ha[s] no burden to negate jurisdiction in every state." *Nagravision,* 2018 WL 746538 at *3.  The burden then shifts to Defendants "to affirmatively establish that the court lacked personal jurisdiction under 4(k)(2) because there was a state where its courts of general jurisdiction could properly exercise jurisdiction over it." *Id.*  The Fifth Circuit streamlines the jurisdictional determination under Rule 4(k)(2) by providing that "so long as a defendant does not concede to jurisdiction in another state, a court may use 4(k)(2) to confer jurisdiction." *Adams*, 364 F.3d at 651.

*First,* DISH met its burden of pleading the requisite contacts with the United States and Rule 4(k)(2)'s applicability because DISH pled that Defendants marketed, made available, and distributed ZemTV[1] to consumers throughout the United States, resulting in the unauthorized retransmission of television channels exclusively licensed to DISH and causing injury to DISH throughout the United States.  (Dkt. 10 ¶ 6.)

*Second,* DISH pled that the Court's exercise of jurisdiction over Defendants is consistent with the Constitution and laws of the United States because DISH's claims arise under federal law and the unauthorized retransmission of television channels exclusively licensed to DISH occurred in the United States, including in the State of Texas.  (*Id.*)

*Third,* DISH pled that Defendants are not subject to the jurisdiction of the courts of general jurisdiction of any state.  (*Id.*)  Lackman is a Canadian citizen and resident of Montreal, Quebec.  (Dkt. 24 at 4.)  Durrani is a British citizen and resident of London, England.  (*Id.*)  Defendants contend they are not subject to jurisdiction under the State of Texas long arm statute.  (*Id.* at 3-7.)  Defendants failed to respond to written discovery requiring them to identify any other state in

---

[1] The ZemTV add-on for the Kodi media player and ZemTV service are collectively referred to as "ZemTV."

which they would be subject to jurisdiction, and failed to respond to discovery seeking information about their contacts with other specific states in the United States.[2]  (App. at 261-281, 87 ¶¶ 14-17.)  Defendants have not conceded to jurisdiction in another state and the Court may use 4(k)(2) to confer jurisdiction.  *Adams*, 364 F.3d at 651.

Therefore, the second element for a finding of personal jurisdiction under Rule 4(k)(2) is satisfied because DISH pled the requisite contacts with the United States and Rule 4(k)(2)'s applicability, and Defendants have not conceded to jurisdiction in another state or proven that jurisdiction in another state would be proper.

### C.    Exercising jurisdiction is consistent with Constitutional due process.

"Rule 4(k)(2) [] sanctions personal jurisdiction over foreign defendants for claims *arising under federal law* when the defendant has sufficient contacts with the nation as a whole to justify the imposition of United States' law . . . ."  *World Tanker Carriers Corp. v. M/V Ya Mawlaya*, 99 F.3d 717, 721 (5th Cir. 1996).

Minimum contacts is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum [], thus invoking the benefits and protections of its laws."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).  Such availment of the benefits and protections of the forum must be sufficient enough that the defendant "should reasonably anticipate being haled into court [in the forum]."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

---

[2] DISH served Defendants with interrogatories and requests for production on January 18, 2018. (App. at 261-263, 268-281, 87 ¶¶ 14-17.)  DISH has not received Defendants' discovery responses that were due by February 20, 2018.  Defendants' counsel did not respond to a request that they provide Defendants' discovery responses.  (App. at 265, 87 ¶ 14.)  The Court has discretion to infer that Defendants failed to respond to discovery because their responses would establish personal jurisdiction against them.  *See* Fed. R. Civ. P. 37(e); *BNSF,* 550 F.3d at 424 (It is within the sound discretion of the court to draw a negative inference from a party's failure to produce evidence within its possession or control if the purpose of that party's failure to produce was to "conceal adverse facts."); *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 629-640, 653 (S.D. Tex. 2010) (adverse inference was appropriate where, in responding to discovery, party acted with "bad faith").

"Courts addressing the issue of whether personal jurisdiction can be constitutionally exercised over a defendant look to the 'nature and quality of commercial activity that an entity conducts over the Internet.'"  *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999) (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). [3]  The Fifth Circuit adopted the reasoning of *Zippo* categorizing Internet use into a spectrum of three areas: (1) personal jurisdiction is proper "where a defendant clearly does business over the Internet by entering into contracts with residents of other states which involve the knowing and repeated transmission of computer files over the Internet"; (2) personal jurisdiction is not appropriate where a defendant merely establishes a passive website that does nothing more than advertise on the Internet; and (3) where a website falls somewhere in between and allows a user to exchange information with a host computer, "the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the Website." *Mink*, 190 F.3d at 336.

Defendants have minimum contacts with the United States as a whole.

### 1. Defendants operated a joint venture that targeted and interacted with the United States.

Defendants worked together in a joint venture or partnership to jointly develop, market, and distribute ZemTV to United States users through the *www.tvaddons.ag* and *www.tvaddons.org* (collectively "TV Addons") websites.  (Dkt. 10 ¶¶ 1, 11-15); *see MetroplexCore, L.L.C. v. Parsons Transp., Inc.*, 743 F.3d 964, 972 (5th Cir. 2014) (citing Tex. Bus. Orgs. Code Ann. § 152.051(b)) ("[A]n association of two or more persons to carry on a business for profit as owners creates a partnership, regardless of whether: (1) the persons intend to create a partnership; or (2) the association is called a 'partnership,' 'joint venture,' or other name.").  In so doing, Defendants each purposefully availed themselves of the United States market.  And "the contacts of one co-venturer can be imputed to another in the exercise of personal jurisdiction over a non-resident

---

[3] Although in *Mink*, the court did not find jurisdiction because the website at issue did not possess any Zippo-interactive features other than the defendant's email address.  190 F.3d at 337.  *Mink* is distinguishable because Defendants communicated with and knowingly distributed a copyright-infringing streaming service to consumers in the forum via their popular TV Addons website.

when the co-venturer is acting in furtherance of the joint venture." *Walker v. Williamson*, 131 F. Supp. 3d 580, 592 (S.D. Miss. 2015); *Nolan v. Boeing Co.*, 736 F. Supp. 120, 127 (E.D. La. 1990).

Durrani also developed, updated, and supported ZemTV. (Dkt. 10 ¶ 3, 11, 13.) Lackman owned and operated TV Addons*,* which was used by Defendants to host, distribute, and promote ZemTV. (Dkt. 10 ¶¶ 4, 11, 13-15.) Lackman authorized Durrani to control portions of TV Addons, providing him with his own support forum and repository for ZemTV and the title "Team TV ADDONS Staff." (*Id.* ¶ 13; App. at 14, 6 ¶ 5; *see also* App. at 137-138, 81 ¶ 10(b) (Durrani's forum was one of thirteen under the "Community Staff Kodi Addons" section of TV Addons).)

Defendants each purposefully availed themselves of the United States market through their individual contributions to the production and distribution of ZemTV. And because Defendants worked together for the common purpose of producing and distributing ZemTV through TV Addons, each of their individual contributions to the infringement endeavor should be attributable to the other. *See Walker*, 131 F. Supp. 3d 580 at 592.

### 2. Defendants' used TV Addons and Streamingboxes to enter into contracts with residents of the United States which involved knowing and repeated transmissions of data.

Personal jurisdiction is proper "where a defendant clearly does business over the Internet by entering into contracts with residents of other states which involve the knowing and repeated transmission of computer files over the Internet." *Mink*, 190 F.3d at 336; *see Tempur-Pedic Int'l, Inc. v. Go Satellite Inc.*, 758 F. Supp. 2d 366, 373 (N.D. Tex. 2010) (applying *Zippo* and finding personal jurisdiction where Canadian defendant operated an interactive website from which defendant entered into several commercial transactions with forum residents).

Defendants entered into contracts with TV Addons users residing in the United States by means of the TV Addons terms and conditions of use, privacy policy, and *www.streamingboxes.com* ("Streamingboxes"). *See CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1996) (finding personal jurisdiction where the defendant entered into online contracts with terms and conditions). The TV Addons "Terms and Conditions of Use" state, "By accessing this Website, you are agreeing to be bound by these Website Terms and Conditions of

Use and agree that you are responsible for the agreement with any applicable local laws.  If you disagree with any of these terms, you are prohibited from accessing this site." (App. at 118, 79 ¶ 6.)  The TV Addons Privacy Policy defines terms "as described in US privacy law" and references several United States statutes including the California Online Privacy Protection Act, the Children's Online Privacy Protection Act, the Fair Information Practices Principles, and the CAN-SPAM Act.  (App. at 122-124, 79-80 ¶ 7.)   Defendants also referred TV Addons users to Streamingboxes where Defendants sold set-top boxes and received donations from TV Addons users.  (App. at 110-111, 78-79 ¶ 4; App. at 114- 116, 79 ¶ 5.)  By entering into contracts with TV Addons users including references to United States laws, Defendants "should reasonably anticipate being haled into court [in the United States]."  *See World-Wide Volkswagen*, 444 U.S. at 297; *CompuServe*, 89 F.3d at 1263-64.

Defendants purposefully availed themselves of the benefits of conducting business in the United States by transacting with United States residents over the Internet.  *See Tempur-Pedic*, 758 F. Supp. 2d at 373 (finding personal jurisdiction where forum residents purchased mattresses over the internet from defendant's website).  Defendants failed to respond to discovery seeking the number and geographic location of users who accessed TV Addons or downloaded ZemTV.  (App. at 265, 270, 280, 87 ¶¶ 14-15, 17.)    However, Defendants admit there were 39,463,419 unique TV Addons users for March 2017.  (App. at 284, 87 ¶ 18.)  The United States was Defendants' largest market with 33.69% of all TV Addons traffic coming from users located in the United States and this is more than three times the traffic from the second largest market.  (App. at 287, 88 ¶ 19; *see also* App. at 130, 80 ¶ 8 (listing the United States, United Kingdom, Canada, and Germany in the same order).)  Therefore, it can be estimated that Defendants entered into contracts with approximately 13.3 million TV Addons users residing in the United States during March 2017 alone.  *See* Fed. R. Civ. P. 37(e); *BNSF*, 550 F.3d at 424 (courts have discretion to draw a negative inference from a party's failure to produce evidence if the purpose was to conceal adverse facts); *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 629-640, 653 (S.D. Tex. 2010)

(adverse inference was appropriate where, in responding to discovery, party acted with "bad faith").

Defendants boast "We don't allow statistics for individual addons or anything, so all we really have is the number of unique installs that ping our servers per day."  (App. at 283, 87 ¶ 18.) However, Defendants marketed ZemTV as the third "Best Kodi Addon[] for Live TV and Sports Streaming."  (App. at 132-133, 80 ¶ 9.)  Therefore a conservative estimate of the number of users residing in the United States that downloaded ZemTV would be approximately one-third or 4.4 million unique TV Addons users, including about 10,700 registered discussion forum users.  *See* Fed. R. Civ. P. 37(e); *BNSF*, 550 F.3d at 424; *Rimkus*, 688 F. Supp. 2d at 653.

Millions of contracts with United States residents, combined with millions of ZemTV downloads, demonstrates that Defendants' contacts with the United States are not the kind of fortuitous, random, and attenuated contacts the Supreme Court has held insufficient to warrant the exercise of jurisdiction.  *Burger King,* 471 U.S. at 575.

The Court should find personal jurisdiction against Defendants under Rule 4(k)(2) because Defendants clearly do business over the Internet by entering into contracts with residents of the United States which involve the knowing and repeated transmission of computer files over the Internet.

### 3.    TV Addons and Streamingboxes were highly interactive websites that permitted the exchange of information of a commercial nature.

Personal jurisdiction is proper where the defendant's website allows a user to exchange information with a host computer by maintaining an interactive website and the exchange of information is of a commercial nature.  *Mink*, 190 F.3d at 336; *see Am. Auto. Ass'n., Inc. v. Darba Enters. Inc.*, No. C09-00510 SI, 2009 WL 1066506, at *4-5 (N.D. Cal. Apr. 21, 2009) (finding personal jurisdiction where defendant "profited when California users entered their contact information in his website, though he did not sell anything to them directly."); *Arista Records, Inc. v. Sakfield Holding Co.*, 314 F. Supp. 2d 27, 32–33 (D.D.C. 2004) (finding personal jurisdiction where a defendant residing outside the United States operated a website in which users registered

free online accounts and then downloaded music files); *Bright Imperial Ltd. v. RT Mediasolutions, S.R.O.*, No. 1:11-cv-935-LO-TRJ, 2012 WL 1831536, at *8 (E.D. Va. May 18, 2012) (finding personal jurisdiction where a defendant residing outside the United States operated a website that required users to register an online account prior to viewing content).

TV Addons is a highly interactive website that encourages users to download ZemTV and become registered members with additional benefits.  TV Addons encourages all users and specifically those in the United States to download their free Kodi Addons, including ZemTV. (*See* Dkt. 10 ¶ 13; App. at 130, 80 ¶ 8 ("Whether you're in the United States . . . or anywhere else, Kodi Addons will work great for you!"); App. at 132-133, 80 ¶ 9 (identifying ZemTV as the third Best Kodi Addon for Live TV and Sports Streaming).)  All 39.5 million TV Addons users, including users in the United States and Texas, could download ZemTV.  (*See* Dkt. 10 ¶ 13; App. at 77, 284, 87 ¶ 18; App. at 6 ¶ 4.)  TV Addons also encourages users to join and become registered members for "access to post topics, communicate privately with other members (PM), respond to polls, upload content and access many other special features."  (App. at 137, 81 ¶ 10(a).)  TV Addons had 95,739 registered members.  (App. at 140, 81 ¶ 10(e); *see also* App. at 166, 84 ¶ 11(bb) ("We haven't hear any other reports of forum logins not working, did you try the forgotten password function?"); App. at 283, 87 ¶ 18 (admitting to having about 90,000 forum users whom Defendants were able to contact via email).)  Registered members communicated with Durrani for ZemTV support and updates in Durrani's own ZemTV forum with over 130 pages of discussion and more than 1300 user posts.  (Dkt. 10 ¶ 13; App. at 14, 6 ¶ 5 (Durrani post regarding a ZemTV update removing channels that were not working, adding working channels, and stating the update would be provided automatically in a few hours).)

The exchange of information on TV Addons is of a commercial nature because Defendants through ZemTV distributed DISH's exclusively licensed content to users without authorization or paying a subscription fee to DISH.  (Dkt. 10 ¶¶ 8-10, 12, 15; App. at 5 ¶ 3; App at 20-24, 7-8 ¶ 8.) In exchange, Defendants derived revenues from advertising.  (Dkt. 10 ¶ 14.); *see, e.g., Jones v. Dirty World Entm't Recordings, LLC*, 766 F. Supp. 2d 828, 833 (E.D. Ky. 2011) (finding personal

jurisdiction and stating that "defendants are not in this business as a hobby, but rather to make money, as do most web sites, by advertising."). The TV Addons Privacy Policy acknowledges use of cookies. *See* 59 AM. JUR. PROOF OF FACTS 3D *Proof of Personal Jurisdiction in the Internet Age* § 13 (2017) (listing cookies among factors weighing in favor of personal jurisdiction). Cookies are "small files that a site or its service provider transfers to your computer's hard drive through your web browser . . . that enables the site's or service provider's systems to recognize your browser and capture and remember certain information." (App. at 122, 79-80 ¶ 7(b).) Defendants use cookies on TV Addons to (1) "remember and process the items in [users'] shopping cart," (2) "understand [users'] preferences based on previous or current site activity," and (3) "compile aggregate data about site traffic and site interaction." (*Id.*) Defendants confirm that TV Addons uses Google AdSense Advertising and that "Google, as a third-party vendor, uses cookies to serve ads on our site." (App. at 123, 80 ¶ 7(c).) Defendants' advertising revenues increase with an increase in unique TV Addons users and website traffic explaining the free download and support of ZemTV, free member registration for the ZemTV forum, and product giveaways. (*See id.*; App. at 137, 81 ¶ 10(d) (product giveaways); App. at 150-151, 164-165, 81-84 ¶ 11(i-j, z-aa) (same).

The commercial nature of the TV Addons exchange of information is shown by the sales referrals for third party products and services, and donations. (Dkt. 10 ¶ 14); *See Mashantucket Pequot Tribe v. Redican*, 309 F. Supp. 2d 309, 314–19 (D. Conn. 2004) (finding personal jurisdiction where *inter alia* defendant's website generated revenue when users clicked on hyperlinks). Defendants provide links on TV Addons to items for sale on Amazon. (*See* App. at 149, 81-82 ¶ 11(g) ("CYBER MONDAY DEALS FOR KODI USERS" listing three products, the sale price, amount save, and the TV Addons URLs). Defendants also refer TV Addons users to Lackman's Streamingboxes website where they sold set-top boxes and received donations from TV Addons users.[4] (Dkt. 10 ¶¶ 4, 13; App. at 110-111, 78-79 ¶ 4; App. at 114-116, 79 ¶ 5.)

---

[4] Streamingboxes allowed users to login, create an account, add various brands of set-top boxes to a shopping cart, checkout, and advertised free shipping and PayPal as a means of payment. (App.

Defendants' solicitation of donations is also a factor showing the commercial nature of the TV Addons exchange of information.  *See Heroes, Inc. v. Heroes Foundation*, 958 F. Supp. 1, 5 (D.D.C. 1996) (finding personal jurisdiction where the defendant solicited "donations on the Internet on a home page which is always available to District residents, and by soliciting donations in the District's local newspaper").  Defendants encouraged TV Addons and ZemTV users to make donations through Amazon, Bitcoin, using PayPal at Streamingboxes, and by mining cryptocurrency.  (Dkt. 10 ¶¶ 1, 13; App. at 5-6 ¶ 3; App. at 109-112, 78-79 ¶ 4; *see also* App. at 144, 146-147, 149, 81-82 ¶ 11(c, e-f, h) (Bitcoin and mining cryptocurrency).)  Defendants failed to produce the identity of persons located in the United States that made payments or donations related to TV Addons or ZemTV.  (Ferguson Decl. 262, 265, 269, 274, 279, 87 ¶¶ 14-17 (DISH's ROG No. 2 and RFP No. 2).  The Court should make a negative inference that a substantial number of persons located in the United States made payments and donations to Defendants related to TV Addons and ZemTV.  *See* Fed. R. Civ. P. 37(e); *BNSF*, 550 F.3d at 424 (courts have discretion to draw a negative inference from a party's failure to produce evidence if the purpose was to conceal adverse facts); *Rimkus*, 688 F. Supp. 2d at 653 (adverse inference appropriate).

The Court should find personal jurisdiction against Defendants under Rule 4(k)(2) because Defendants' TV Addons website allows a user to exchange information with a host computer by maintaining a highly interactive website and the exchange of information is of a commercial nature.

### 4.    Defendants entered into contracts with nine United States service providers that facilitated Defendants' copyright infringement.

Personal jurisdiction is proper where the defendant enters into contracts "executed and performed in the [forum]."  *Trois v. Apple Tree Auction Ctr., Inc.*, No. 16-51414, 2018 WL 706517, at *2 (5th Cir. Feb. 5, 2018); *see also Exxon Mobil Corp. v. Exxonmobil for Expt., Impt. & Trade Ltd.*, No. 3:12-cv-01122-P, 2013 WL 12124587, at *6 (N.D. Tex. Jan. 25, 2013) (finding

---

at 114-116, 79 ¶ 5.)  The "About Us" page shows a claim that they are "an American-owned company."  (*Id.* at 116.)

personal jurisdiction under Rule 4(k)(2) where defendants residing outside the United States "engaged several United States entities[5] for support []" for its "purely passive website").

Defendants entered into contracts with CloudFlare, Inc. of San Francisco, California, providing CloudFlare's authoritative domain name system servers and content delivery optimization services for TV Addons and Streamingboxes.  (*See* App. at 210-213, 85-86 ¶ 13(a); App. at 310-311, 88 ¶ 22.)  CloudFlare's servers and services were used to make ZemTV available for download and provide support to TV Addons and ZemTV users.  (*See id.* at 210-213, 85-86 ¶ 13(a); Dkt. 10 ¶ 13.)  CloudFlare provides its services subject to terms of service including an agreement that the laws of the United States and the state of California will govern any dispute. (App. at 310-311, 88 ¶ 22.)

Defendants entered into contracts with PayPal, Inc. of San Jose, California for Defendants' receipt of payments and donations from TV Addons and ZemTV users.  (*See* Dkt. 10 ¶¶ 13-14; App. 110-111, 78 ¶ 4(a-c); App. at 114-116, 79 ¶ 5; App. at 313-314, 88 ¶ 23.)  PayPal provides its services subject to a user agreement including that the laws of the state of Delaware will govern any dispute.  (App. at 313-314, 88 ¶ 23.)

Defendants entered into contracts with Amazon.com Inc. of Seattle, Washington for Defendants' receipt of payments and donations from TV Addons and ZemTV users.  (*See* Dkt. 10 ¶¶ 13-14; App. at 110, 78 ¶ 4(d); App. at 316-317, 319-320, 88 ¶ 24.)  Upon information and belief, Durrani also entered into contracts with Amazon to retransmit DISH's exclusively licensed content to ZemTV users, including users located in the United States.  (*See* Dkt. 10 ¶¶ 9-12; App. at 49-50, 9 ¶ 10(a).)  Amazon provides its services subject to conditions of use including that the Federal Arbitration Act, applicable federal law, and the laws of the state of Washington will govern any dispute.  (App. at 316-317, 319-320, 88 ¶ 24.)

Defendants entered into contracts with GitHub, Inc. of Sacramento, California for the transfer of ZemTV files.  (*See* App. at 142, 81 ¶ 11(a) ("If you're on GitHub please be sure to

---

[5] These entities included California-based Yahoo! Inc., Facebook, Inc., and Washington-based domain registrar Dotster. *Exxon*, 2013 WL 12124587 at *6.

follow us, and submit code any time your heart desires!"); App. at 237, 86 ¶ 13(d); App. at 322-323, 89 ¶ 25.)  GitHub provides its services subject to terms of service including an agreement that the federal laws of the United States and the state of California will govern any dispute.  (App. at 322-323, 89 ¶ 25.)

Defendants entered into contracts with Facebook, Inc. of Sacramento California to request donations, provide the number of TV Addons users, advertise products, promote product giveaways, and target United States users with United States television channels, news, and sporting events.  (*See* App. at 142-166, 81 ¶ 11; App. at 229, 86 ¶ 13(c); App. at 325-326, 89 ¶ 26.)  Defendants boasted that they have 5,000 followers on Facebook.  (App. at 283, 87 ¶ 18.) Facebook provides its services subject to terms of service including an agreement that the laws of the state of California will govern any dispute.  (App. at 325-326, 89 ¶ 26.)

Defendants entered into contracts with Twitter, Inc. of San Francisco California to communicate with TV Addons users.  (*See* App. at 283, 87 ¶ 18; App. at 328-329, 89 ¶ 27.) Defendants boasted that they have 18,600 Twitter followers.  (App. at 283, 87 ¶ 18.)  Separately, Durrani entered into contracts with Twitter to provide support to and receive feedback from ZemTV users, including users located in the United States.  (*See* App. at 168-202, 84-85 ¶ 12; App. at 221, 85-86 ¶ 13(b); App. at 328-329, 89 ¶ 27.)  Twitter provides its services subject to terms of service including an agreement that the laws of the state of California will govern any dispute.  (App. at 328-329, 89 ¶ 27.)

Defendants entered into contracts with Google, Inc. of Mountain View, California to provide information to TV Addons users via YouTube.  (*See* App. at 283, 87 ¶ 18; App. at 331-332, 89 ¶ 28.)  Defendants boasted that they have almost 4000 fans on YouTube.  (App. at 283, 87 ¶ 18.)  Separately, Durrani entered into contracts with Google for the email address used to communicate with ZemTV users and contract for services with Twitter, Facebook, GitHub, and Microsoft.  (*See* App. at 221, 229, 237, 248, 256-259, 85-87 ¶¶ 13(b-f); App. at 334-335, 89 ¶ 28.) Google provides its services subject to terms of service including agreements that the service shall

13

be deemed solely based in California and that the laws of the state of California will govern any dispute.  (App. at 331-332, 334-335, 89 ¶ 28.)

Durrani entered into contracts with Microsoft Corporation of Tumwater, Washington for one of the email addresses used to contract for the foregoing services with GitHub.  (*See* App. 237, 256-257, 85-87 ¶ 13(d, f); App. at 337-339, 89 ¶ 29.)  Durrani registered this email address identifying his address as being in Florida with a postal code of 33332, which is located in Broward County, Florida.  (App. at 256, 86-87 ¶ 13(f).)  Microsoft provides its services subject to a service agreement that applies the laws of the state where the user lives, which based on Durrani's account registration is Florida.  (App. at 337-339, 89 ¶ 29.)

Upon information and belief, Durrani entered into contracts with Dynamic Network Services, Inc. of Manchester, New Hampshire to retransmit DISH's exclusively licensed content to ZemTV users, including users located in the United States.  (*See* Dkt. 10 ¶¶ 9-12; App. at 55-72, 9 ¶ 10(b).)

The Court should find personal jurisdiction against Defendants under Rule 4(k)(2) because the forgoing contracts were executed in the United States on the service providers' host servers and Defendants intended to and did utilize these services to augment TV Addons and ZemTV, resulting in the transmission of infringing content to users in the United States.

### 5. Defendants introduced ZemTV into the stream of commerce with the expectation that it would be used by residents of the United States.

A defendant's minimum contacts with and purposeful availment of the forum are also found where the defendant has introduced products or services into the stream of commerce with the expectation that they will be consumed or utilized by residents of the forum.  S*ee Luv n' Care*, 438 F.3d at 470.  "[A] defendants' acts of distributing infringing [content] to U.S. consumers and generating revenue (and diverting consumers from [plaintiff's lawfully distributed content] are acts 'expressly aimed' at the U.S.  *Goes Int'l, AB v. Dodur Ltd.*, No. 3:14-cv-05666-LB, 2015 WL 5043296, at *9-10 (N.D. Cal. Aug. 26, 2015) (finding personal jurisdiction under Rule 4(k)(2) where a Chinese defendant distributed an infringing videogame to United States residents over the

14

Internet).  Designing a product for the forum is an indication of purposeful availment.  *Exxon*, 2013 WL 12124587 at *4.

Defendants used TV Addons to target residents of the United States and it was designed to appeal to United States television consumers.  The TV Addons Home page stated "Whether you're in the United States, United Kingdom, Canada, Germany, India or anywhere else, Kodi Addons will work great for you!"  (App. at 130, 80 ¶ 8.)  The United States was Defendants' largest market with approximately 34% of all TV Addons traffic coming from users located in the United States, which was three times the traffic from the second largest market.  (App. at 287, 88 ¶ 19.) Defendants had a discussion forum called "USTVnow Plugin for Kodi" included under the "Community Endorsed Kodi Addons" section of TV Addons that was described as "Live Streaming of Major American TV Networks from USTVnow."  (App. at 138, 81 ¶ 10(c).) Defendants also made numerous Facebook posts directed towards residents of the United States including, "Watch Game 1 of the World Series (Houston Astros vs Los Angeles Dodgers) on USTVnow" and "Get the best Live TV addon of all time! Free HD access to ABC, CBS, CW, FOX, NBC, PBS with USTVnow Plus addon."  (App. at 152-153, 81-82 ¶ 11(k-l).)   Other Facebook posts by Defendants marketed addons distributing NBC, ABC, NHL, NFL, The New York Times, United States local news, HGTV, Fox News, Food Network, Cooking Channel, DIY Network, Feeform, Smithsonian Channel, Sundance TV, and Travel. (App. at 154-163, 81-82 ¶ 11(m-y).)

Defendants likewise targeted residents of the United States with ZemTV and it was designed to appeal to United States television consumers.  Defendants marketed ZemTV as the third best addon for live television and sports streaming.  (App. 132-133, 80 ¶ 9.)  ZemTV was one of the best addons because it distributed channels exclusively licensed to DISH in the United States and permitted users in the United States to receive the content for free without paying a subscription fee to DISH.  (*See* Dkt. 10 ¶¶ 9-12; App. at 20-24, 5-8, ¶¶ 3, 8; App. at 77 ¶ 2.) Defendants introduced ZemTV into the stream of commerce with the expectation that it would be used by residents of the United States as shown by ZemTV distributing "ESPN US", NBA TV,

NFL Network, WWE Network, BoxNation, "FOX Sports 1 US", Pac-12 Network, Food Network, QVC, Spike TV, and Willow "US Only".  (App. at 91-107, 77-78, ¶ 3.)

"[E]stablishing channels for providing regular advice to customers in the forum" is an additional action that evidences an intent to serve the market of the forum.  *Luv n' Care*, 438 F.3d at 471, n.6 (declining to hold that some additional action on the part of the defendant, beyond foreseeability, is necessary for a finding of personal jurisdiction).  Defendants provided customer support to users in the United States via Facebook, Twitter, and Durrani's ZemTV support forum, which contained more than 1,600 posts by Durrani.  (*See* App. at 14-18, 6 ¶¶ 5-6; App. at 142-179, 81-85 ¶¶ 11-12.)

The Court should find personal jurisdiction against Defendants under Rule 4(k)(2) because Defendants introduced ZemTV into the stream of commerce with the expectation that it would be used by residents of the United States.

### 6.    The exercise of jurisdiction is appropriate under the *Calder* effects test.

The *Calder* effects test is applicable when determining whether the exercise of jurisdiction is appropriate for cases arising from copyright infringement taking place on the Internet.  *See Guidry*, 188 F.3d at 623, n.2 (stating that the *Calder* effects test was not limited solely to libel cases); *AllChem Performance Prods., Inc. v. Aqualine Warehouse, LLC*, 878 F. Supp. 2d 779, 793 (S.D. Tex. 2012) (applying *Calder* to copyright infringement action); *Calder v. Jones*, 465 U.S. 783, 788 (1984).  The exercise of personal jurisdiction is appropriate under the *Calder* effects test where the (1) defendant knows the focal point of the harm from their action is inside the forum and (2) the "defendant's conduct connects him to the forum in a meaningful way."  *Walden v. Fiore*, 134 S. Ct. 1115, 1125 (2014).

The focal point of the harm from TV Addons and ZemTV was in the United States.  A defendant can be placed on notice that their copyright infringement is harming a plaintiff in the forum by means of a cease-and-desist letter.  *See Was. Shoe Co. v. A-z Sporting Goods Inc.*, 704 F.3d 668, 675 (9th Cir. 2012) (finding personal jurisdiction and stating that "[defendant's] intentional acts were expressly aimed at the copyright held by [plaintiff] because [defendant] *knew*

that its intentional acts would impact [plaintiff's] copyright by virtue of the cease-and-desist letters it had received."). DISH sent cease-and-desist letters to Defendants and their service providers notifying them that ZemTV was infringing DISH's copyrights in the United States. (Dkt. 10 ¶ 16; App. at 289-292, 297-308, 88 ¶¶ 20-21.) And Defendants' boasting on TV Addons that their services allow users "to cut down your cable or satellite television bill substantially, if not entirely" shows that Defendants were well aware that TV Addons and ZemTV were harming DISH and other legitimate, subscription television service providers in the United States. (*See* App. at 134, 80 ¶ 9.) The first element for a finding of personal jurisdiction under the *Calder* test is met because Defendants knew the focal point of the harm to DISH was in the United States.

To establish jurisdiction under the *Calder* test, the defendant's own conduct must connect him to the forum in a meaningful way. *Walden*, 134 S. Ct. 1115 at 1125 (interpreting *Calder*); *Revel v. Lidov*, 317 F.3d 467, 473 (5th Cir. 2002) (interpreting *Calder* in the website context). This prong of the *Calder* test is satisfied through "broad publication" in the forum, *Walden*, 134 S. Ct. 1115 at 1125, from "draw[ing] from [forum] sources…," or from "reference[s] to [the forum]." *Revel*, 317 F.3d at 473 (interpreting *Calder*).

Defendants broadly published ZemTV and its infringing content in the United States as shown by the millions of forum residents that visited TV Addons and downloaded and used ZemTV. (*See supra* Section IV(C)(1).) TV Addons made references to the forum concerning ZemTV and its content. (*See* App. at 130, 80 ¶ 8 ("Whether you're in the United States . . . or anywhere else, Kodi Addons will work great for you!"); App. at 132-133, 80 ¶ 9 (identifying ZemTV as the third best Kodi Addon for live television and sports streaming). And the ZemTV content drew from and referred to the forum including channels in which DISH held the exclusive United States distribution rights and other well-known American sports and entertainment channels including "ESPN US", NBA TV, NFL Network, WWE Network, BoxNation, "FOX Sports 1 US", Pac-12 Network, Food Network, QVC, Spike TV, and Willow "US Only." (Dkt. 10 ¶¶ 8-10; App. at 91-107, 77-78 ¶¶ 2-3; App. at 20-24, 7-8 ¶ 8). The second element for a finding of personal jurisdiction under the *Calder* test is met because Defendants broadly published ZemTV

17

and its infringing content in the United States, made references to the United States, and drew ZemTV content from United States sources. *Walden*, 134 S. Ct. 1115 at 1125; *Revel*, 317 F.3d at 473.

The Court should find personal jurisdiction against Defendants under Rule 4(k)(2) and the *Calder* effects test.

**D**.     **DISH's claims arise from Defendants' minimum contacts with the United States.**

To establish specific personal jurisdiction, the plaintiff's claims must relate to the defendant's minimum contacts with the forum state. *McFadin v. Gerber*, 587 F.3d 753, 763 (5th Cir. 2009).

DISH brought claims against Defendants for direct and secondary copyright infringement arising from their use of TV Addons to jointly develop, update, market, distribute, host, and support ZemTV.  (Dkt. 10 ¶¶ 3-4, 11, 13-15, 17-41.)  In doing so, Defendants made extensive contacts with and purposefully availed themselves of the United States as a whole.  (*See supra* Section IV(C)(1)) (Defendants entered into contracts with millions of users in the United States); Section IV(C)(2)) (Defendants operated a highly interactive website of a commercial nature utilized by millions of United States residents); Section IV(C)(3)) (Defendants contracted with nine United States service providers to augment and facilitate the distribution of ZemTV and the copyrighted content in the United States).)   Accordingly, DISH's copyright infringement claims against Defendants necessarily relate to Defendants' contacts with the United States.

**E**.     **The exercise of personal jurisdiction over Defendants is fair and reasonable.**

The exercise of personal jurisdiction over a defendant must also be "fair and reasonable." *McFadin*, 587 F.3d at 759.  "In determining whether or not the exercise of jurisdiction is fair and reasonable, defendants bear the burden of proof and it is rare to say the assertion of jurisdiction is unfair after minimum contacts have been shown." *Id*. at 759-60.  This is a five-factor inquiry: (1) the burden on the defendant, (2) the forum state's interest, (3) the plaintiff's interest in securing

relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in further fundamental social policies.  *Id*.

Applying these factors, the exercise of personal jurisdiction is fair and reasonable because the only factor weighing against jurisdiction is the fact that Defendants reside outside the United States.  "[T]he United States has a substantial interest in curtailing the undaunted showcasing of . . . protected intellectual property that allegedly infringes on a domestic entity's rights."  *Exxon*, 2013 WL 12124587 at *7.  "As [a] lawsuit brought on federal grounds, Plaintiff has a strong interest to protect itself from those [defendants] availing themselves of the privileges and protections of the United States to the detriment of Plaintiff's business."  *Id.*  "Moreover, to force Plaintiff to litigate these inherently distinctive rights overseas would not be efficient or even guarantee that a proper forum for relief would be available."  *Id.*  "Finally, social policies are furthered when a foreign entity targeting the markets of the United States is amenable to a lawsuit when the claims arise under a federal statute." *Id*. (finding the exercise of personal jurisdiction fair and reasonable where defendants residing outside the United States were alleged to have infringed the plaintiff's trademarks).

## V.   Conclusion

DISH alleged personal jurisdiction under Rule 4(k)(2) based upon the Defendants being foreign defendants with minimum contacts with the United States as a whole.  Defendants had a duty to negate personal jurisdiction under Rule 4(k)(2), but they failed to do so.  *See Adams*, 364 F.3d at 652 ("Because we conclude that our exercise of jurisdiction is clearer and more straightforward under Rule 4(k)(2) than under Louisiana law, we affirm the district court's jurisdictional ruling on this alternate basis."); *Nagravision*, 2018 WL 746538 at *3 (affirming personal jurisdiction over foreign defendants in the Southern District of Texas under Rule 4(k)(2) and explaining that the defendant bears the evidentiary burden of negating jurisdiction under that subsection).  The Court should find personal jurisdiction against Defendants under Rule 4(k)(2) and deny Defendants' motion to dismiss.  (*See id.*)

Dated:  February 28, 2018

Respectfully submitted,

**HAGAN NOLL & BOYLE LLC**

By:  s/ Stephen M. Ferguson
       Stephen M. Ferguson (attorney-in-charge)
       Texas Bar No. 24035248
       Southern District of Texas Bar No. 614706
       Two Memorial City Plaza
       820 Gessner, Suite 940
       Houston, Texas 77024
       Telephone: (713) 343-0478
       Facsimile: (713) 758-0146

       Joseph H. Boyle (of counsel)
       Texas Bar No. 24031757
       Southern District of Texas Bar No. 30740

       **Counsel for Plaintiff DISH Network L.L.C.**

**<u>Certificate of Service</u>**

I hereby certify that on February 28, 2018, a true and correct copy of the foregoing document was filed electronically with the Clerk of the Court, using the CM/ECF system, which sent notification of such filing to all CM/ECF participants in this case.

       s/ Stephen M. Ferguson
       Stephen M. Ferguson