# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| DISH NETWORK L.L.C., | § | |
| | § | |
| Plaintiff, | § | Civil Action No. 4:17-cv-01618 |
| | § | |
| v. | § | |
| | § | |
| SHAHJAHAN DURRANI, d/b/a ZemTV, | § | |
| and ADAM LACKMAN, d/b/a | § | |
| www.tvaddons.ag, www.tvaddons.org, | § | |
| www.streamingboxes.com, and | § | |
| www.offshoregit.com | § | |
| | § | |
| | § | |
| Defendants. | § | |

**<u>Plaintiff DISH Network L.L.C.'s Memorandum of Points and Authorities in Support of Motion for Default Judgment Against Shahjahan Durrani</u>**

## Table of Contents

I.      Summary ....................................................................................................................1

II.     Issues Presented.......................................................................................................2

III.    Argument and Authorities........................................................................................2

        A.      Legal Standard .............................................................................................2

        B.      The Court has Jurisdiction to Grant Default Judgment..........................................2

        C.      Default Judgment on Count I, Direct Copyright Infringement. ...........................3

                1.      DISH Owns Valid Copyrights. ...............................................................3

                2.      Defendant Infringed DISH's Copyrights. .................................................5

        D.      Statutory Damages Should be Awarded for Copyright Infringement. ..................6

                1.      Defendant Engaged in Massive Copyright Infringement. ........................7

                2.      Statutory Damages Should be Awarded at $150,000 for Each of the
                        Thirteen Registered Works. .................................................................8

        E.      DISH Should be Awarded Permanent Injunctive Relief. ...................................11

                1.      DISH's Irreparable Harm and Money Damages are Inadequate. ...........11

                2.      The Balance of Equities and Public Interest Favor an Injunction. ...........13

                3.      The Court Should Order Third Party Service Providers to Cease Providing
                        Services Supporting Defendant's infringement. .....................................13

IV.     Conclusion ..............................................................................................................14

## Table of Authorities

**Cases**

*Am. Broad. Cos. v. Aereo, Inc.*,
    134 S.Ct. 2498 (2014) ...................................................................................6

*Apple Computer, Inc. v. Franklin Computer Corp.*,
    714 F.2d 1240, 1255 (3d Cir. 1983) ............................................................13

*Arista Records LLC v. Doe 3*,
    604 F.3d 110 (2d Cir. 2010) ........................................................................5

*Arista Records, LLC v. Tkach*,
    No. 15-cv-3701(AJN), 122 F. Supp. 3d 32 (S.D.N.Y. 2015) .........................14

*Broadcast Music, Inc. v. Xanthas, Inc.*,
    855 F.2d 233 (5th Cir. 1998) ........................................................................8

*Chi-Boy Music v. Charlie Club, Inc.*,
    930 F.2d 1224, 1227 (7th Cir. 1991) ............................................................8

*China Central Television v. Create New Tech. (HK) Ltd.*,
    No. 15-01869 MMM, 2015 WL 3649187 (C.D. Cal. June 11, 2015) ...................6, 12-13

*China Central Television v. Create New Tech. (HK) Ltd.*,
    No. 15-01869 MMM, Dkt. 158 (C.D. Cal. Dec. 7, 2015) ..............................10

*China Central Television v. Create New Tech. (HK) Ltd.*,
    No. 15-01869 MMM, Dkt. 192 (C.D. Cal. May 31, 2016) ......................13-14

*Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*,
    259 F.3d 1186 (9th Cir. 2001) ....................................................................10

*Davis v. Blige*,
    505 F.3d 90 (2d Cir. 2007) ..........................................................................4

*Fox Television Stations, Inc. v. BarryDriller Content Sys.*,
    *PLC*, 915 F. Supp. 2d 1138 (C.D. Cal. 2012) .............................................12

*DISH Network L.L.C. v. Lool Tech Co., Ltd.*,
    No. 4:16-cv-01771, Dkt. 25 (S.D. Tex. Mar. 17, 2017) .......................6, 10, 14

*DISH Network L.L.C. v. Shava IPTV Network LLC*,
    No. 1:15-cv-00706 (TSE/IDD), Dkt. 120 (E.D. Va. Sept. 15, 2016) .................4-6, 11-13

*DISH Network L.L.C. v. Shava IPTV Network LLC,*
    No. 1:15-cv-00706 (TSE/IDD), Dkt. 124 (E.D. Va. Jan. 24, 2017) ............................6, 10

*DISH Network L.L.C. v. Shava IPTV Network LLC,*
    No. 1:15-cv-00706 (TSE/IDD), Dkt. 136 (E.D. Va. Feb. 2, 2018) .................................14

*DISH Network L.L.C. v. Shava IPTV Network LLC,*
    No. 1:15-cv-00706 (TSE/IDD), Dkt. 138 (E.D. Va. Feb. 22, 2018) ..............................14

*DISH Network L.L.C. v. TV Net Solutions, LLC,*
    No. 6:12-cv-1629-Orl-41TBS, 2014 WL 6685351 (M.D. Fla. Nov. 25, 2014) ............4, 6

*eBay Inc. v. MercExchange, L.L.C.,*
    547 U.S. 388 (2006) .......................................................................................................11

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,*
    499 U.S. 340 (1991) .....................................................................................................3, 5

*Fl. Businessmen v. City of Hollywood,*
    648 F.2d 956 (5th Cir. 1981) .........................................................................................11

*General Universal Systems, Inc. v. Lee,*
    379 F.3d 131 (5th Cir. 2004) ...........................................................................................5

*Glovaroma, Inc. v. Maljack Productions, Inc.,*
    71 F.Supp.2d 846 (N.D. Ill. 1999) ...................................................................................5

*James v. Frame,*
    6 F.3d 307 (5th Cir. 1993) ...............................................................................................2

*Lakedreams v. Taylor,*
    932 F.2d 1103 (5th Cir. 1991) .......................................................................................13

*Malaco Inc. v. Cooper,*
    No. 300CV2648P, 2002 WL 1461927 (N.D. Tex. July 3, 2002) ......................................8

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,*
    518 F. Supp. 2d 1197 (C.D. Cal. 2007) .....................................................................12-13

*Nishimatsu Constr. Co. v. Houston Nat'l Bank,*
    515 F.2d 1200 (5th Cir. 1975)......................................................................................2, 7

*Showtime Networks Inc. v. Doe,*
    No. 2:15-cv-03147-GW-MRW, Dkt. 20 (C.D. Cal. Apr. 30, 2015) ...............................14

*Smith v. Casey*,
    741 F.3d 1236 (11th Cir. 2014) ........................................................5

*Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co.*,
    74 F.3d 488 (4th Cir. 1996) ....................................................... 8-9

*Teri Woods Publ'g, L.L.C. v. Williams*,
    No. 12-4854, 2013 WL 6179182 (E.D. Pa. Nov. 25, 2013) ...........................................10

*Times Content Limited v. Doe*,
    No. 4:17-cv-01287, Dkt. 10 (S.D. Tex. May 5, 2017) ....................................14

*Valley v. Rapides Parish Sch. Bd.*,
    118 F.3d 1047 (5th Cir. 1997) ..........................................................11

*Warner Bros. Entm't, Inc. v. Doe*,
    No. 14-cv-3492, Dkt. 27 (S.D.N.Y. Oct. 3, 2014) .........................................14

*Warner Bros. Entm't, Inc. v. WTV Sys., Inc.*,
    824 F. Supp. 2d 1003 (C.D. Cal. 2011) ......................................................12

## Statutes & Rules

17 U.S.C. § 101 ........................................................................ 4-5

17 U.S.C. § 104(b) ........................................................................4

17 U.S.C. § 106 ........................................................................5

17 U.S.C. § 201(d) ........................................................................3

17 U.S.C. § 204(a) ........................................................................3

17 U.S.C. § 401(c) ........................................................................5

17 U.S.C. § 410(c) ........................................................................4

17 U.S.C. § 411(a) ........................................................................ 4-5

17 U.S.C. § 412(2) ........................................................................7

17 U.S.C. § 501(b) ........................................................................ 4-5

17 U.S.C. § 502(a) ........................................................................2, 11

17 U.S.C. § 504(a, c) ........................................................................2, 6, 8

Fed. R. Civ. P. 55(b)(2) ........................................................................ 2-3

**<u>Secondary Sources</u>**

U.S.C.O., Circular 38(a)................................................................................................................4

## I.    Summary

Plaintiff DISH Network L.L.C. ("DISH") sued Defendant Shahjahan Durrani ("Defendant") for direct copyright infringement.  Defendant committed copyright infringement by operating the ZemTV service, which unlawfully retransmitted television channels and copyrighted content exclusively licensed to DISH throughout the United States.  (Dkt. 10 First Amended Complaint ¶¶ 1, 11-12.)  Defendant's wrongful acts infringed DISH's exclusive rights to distribute and publicly perform the programming that airs on these protected channels.

Defendant created the ZemTV add-on for the Kodi media player and managed and operated the ZemTV service. [1]  Defendant selected and located channels exclusively licensed to DISH that were, without authorization, continuously captured and retransmitted over the Internet to users of ZemTV in the United States.  (Dkt. 10 ¶¶ 11-12.)  Defendant developed ZemTV and then distributed and supported it through the Tvaddons.ag and Offshoregit.com websites (collectively "Tvaddons"), resulting in his unauthorized retransmission of television channels exclusively licensed to DISH and causing injury to DISH throughout the United States.  (Dkt. 10 ¶¶ 13-15.)  Therefore, Defendant is liable for direct copyright infringement.

Defendant engaged in these illegal activities for more than 16 months, despite having received DISH's notices of infringement from his service providers and Tvaddons.  (Dkt. 10 ¶ 16.)  These notices of infringement informed Defendant of the infringing nature of his conduct and demanded that the protected channels be removed from ZemTV.  (Dkt. 10 ¶ 16.)  Defendant continued to retransmit the protected channels resulting in willful copyright infringement.

Defendant initially retained counsel and appeared in this action filing a motion to dismiss alleging that the Court did not have personal jurisdiction.  The Court disagreed finding personal jurisdiction.  Defendant then instructed his counsel to take no further action on his behalf and he

---

[1] The ZemTV add-on for the Kodi media player and ZemTV service are collectively referred to as "ZemTV."

failed to answer DISH's complaint or further defend.  Default judgment is now appropriate.  DISH requests maximum statutory damages for thirteen registered, copyrighted works, which represents a small fraction of Defendant's overall infringement, and a permanent injunction to prevent further infringement of DISH's copyrights and further irreparable harm to DISH.

## II.      Issues Presented

1.      Do the well-plead factual allegations in DISH's complaint establish Defendant's liability for direct copyright infringement?

2.      Was Defendant's copyright infringement willful, warranting maximum statutory damages for thirteen registered works?

3.      Should a permanent injunction be issued to prevent further infringement of DISH's copyrights and further irreparable harm to DISH?

## III.      Argument and Authorities

### A.      Legal Standard

Default judgment is properly entered if the well-pleaded factual allegations in the complaint, taken as true, establish Defendant's liability.  *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).  Damages may be awarded without a hearing if "the amount claimed is a liquidated sum or one capable of mathematical calculation." *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).  Statutory damages up to $150,000 per work may be awarded for willful copyright infringement.  17 U.S.C. § 504(c).  The Copyright Act authorizes the Court to "grant . . . final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a).

### B.      The Court has Jurisdiction to Grant Default Judgment.

Defendant defaulted by instructing his counsel to take no further action on his behalf and failing to answer DISH's complaint despite being properly served.  (Dkts. 19, 34, 36.)  Defendant was served with applications for entry of default and this motion.  (Dkt. 35, Certificate of Service.)  Defendant is over the age of 18, of sound mind, and a British citizen and resident, and therefore he is not a minor, incompetent, or exempt under the Servicemembers' Civil Relief Act.  Fed. R.

2

Civ. P. 55(b)(2); (Dkt. 24-1, Durrani Decl. ¶¶ 1-2).  The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338, personal jurisdiction under Fed. R. Civ. P. 4(k)(2), and venue is proper.  (App. at 11, 13-14, 4-5 ¶¶ 2-4; App. at  462-466, 458-460 ¶¶ 4-6; Dkt. 10 ¶¶ 5-7; Dkt. 28, Opposition to Motion to Dismiss for Lack of Personal Jurisdiction; Dkt. 29 Order Denying Motion to Dismiss for Lack of Personal Jurisdiction).

## C.    Default Judgment on Count I, Direct Copyright Infringement.

A claim for copyright infringement has two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

### 1.    DISH Owns Valid Copyrights.

DISH is one of the largest pay-television providers in the United States, delivering copyrighted programming to millions of subscribers nationwide.  (Dkt. 10 ¶ 8.)  Networks provide channels that include Aaj Tak, Aastha Bhajan, Aastha TV, ARY Digital, ARY News, B4U Movies, B4U Music, Dunya TV, Express Entertainment, Express News, Geo News, Geo TV, Hum Masala, Hum Sitaray, Hum TV, India Today (Headlines Today), Movies OK, Sahara One, Sahara Samay, Times Now, and Zoom (collectively, "Protected Channels").  (*Id.* ¶¶ 9-10.)  The licensors of the Protected Channels acquire copyrights in the works that air on their respective channels including by producing works and by assignment.  (*Id.* ¶ 10.)  Copyrighted works that aired on the Protected Channels and are registered with the United States Copyright Office include episodes of Khabar Yeah Hai, Nuqta-E-Nazar, On the Front, Tonight with Moeed Pirzada, and Voice of Dunya.  (App. at  307-332, 5-6 ¶ 7; *see also* Dkt. 10 ¶¶ 10, B (seeking statutory damages for registered copyrights)).

DISH holds the exclusive right to distribute and publicly perform in the United States the works that air on the Protected Channels pursuant to written licensing agreements with networks and their agents ("Networks").  (Dkt. 10 ¶¶ 9-10.)  The written agreements are sufficient to transfer the specified exclusive rights to DISH.  *See* 17 U.S.C. §§ 201(d), 204(a) (authorizing transfer of rights protected under the Copyright Act by signed, written agreement).  As the exclusive licensee

3

of the distribution and public performance rights, DISH may sue for Defendant's infringement of those rights.  17 U.S.C. § 501(b); *Davis v. Blige*, 505 F.3d 90, 100 n.10 (2d Cir. 2007) ("Under current copyright law, exclusive licenses are recognized as a type of an ownership interest …. Exclusive licensees may sue without joining the copyright owners.").

The foregoing well-pleaded allegations in DISH's complaint satisfy the requirement of copyright ownership.  (Dkt. 10 ¶¶ 10, B); *DISH Network L.L.C. v. TV Net Solutions, LLC*, No. 6:12-cv-1629-Orl-41TBS, 2014 WL 6685351, at \*4-5 (M.D. Fla. Nov. 25, 2014) (granting default judgment finding copyright ownership was sufficiently alleged where complaint stated the plaintiff held the exclusive right to distribute television programs pursuant to written agreements entered into with channel providers); *see also* 17 U.S.C. § 410(c) (stating that a certificate of registration is "prima facie evidence of the validity of the copyright and of the facts stated in the certificate," including ownership); *DISH Network L.L.C. v. Shava IPTV Network LLC*, No. 1:15-cv-00706 (TSE/IDD), Dkt. 120 at 9 (E.D. Va. Sept. 15, 2016) (plaintiffs presumed to have valid copyrights because copyrights registered with U.S.C.O.); (App. at 402, 307-332, 5-6 ¶ 7).

A published work is protected provided: "(1) on the date of first publication, one or more of the authors … is a national, domiciliary, or sovereign authority of a treaty party … ; or (2) the work is first published … in a foreign nation that, on the date of first publication, is a treaty party." 17 U.S.C. § 104(b).

DISH claims protection for works that aired on the Protected Channels and were authored or first published in Pakistan and India. (Dkt. 10 ¶¶ 18-19.) These nations are parties to a copyright treaty adhered to by the United States, the Berne Convention for the Protection of Literary and Artistic Works, and therefore each is a "treaty party" under section 104(b).  17 U.S.C. § 101; U.S.C.O., Circular 38(a), *available at www.copyright.gov/circs/circ38a.pdf*.  The works at issue satisfy the requirements of section 104(b) for protection under the Copyright Act.

DISH's copyrighted works need not be registered with the United States Copyright Office to be protected. Registration is only necessary for a "United States work."  17 U.S.C. § 411(a).  A work first published in a treaty party is not a "United States work."  *See id.* § 101 (defining the

4

term as a work first published in the United States, simultaneously in the United Sates and another place, or in a foreign nation not a treaty party).  DISH alleges that its copyrighted programs are not United States works because they were authored or first published in Pakistan and India, which are treaty parties under the Copyright Act.  (Dkt. 10 ¶ 19.)  Thus, neither DISH nor Networks are required to register their works.  17 U.S.C. § 411(a).

However, as discussed in Part III.D.1, thirteen of DISH's copyrighted works are registered with the United States Copyright Office, which creates a presumption as to ownership and validity. *See* 17 U.S.C. § 401(c); *General Universal Systems, Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004) ("A certificate of registration, if timely obtained, is prima facie evidence of both that a copyright is valid and that the registrant owns the copyright."); *Shava*, Dkt. 120 at 9 (applying § 401(c) presumption to registered Hindi language programs).  "[O]wnership of a valid copyright" is established by default. *Feist*, 499 U.S. at 361. DISH is the exclusive licensee pursuant to written agreements with Networks, and therefore DISH holds the copyrights in the registered works.  (Dkt. 10 ¶¶ 9-10); *see Glovaroma, Inc. v. Maljack Productions, Inc.*, 71 F.Supp.2d 846, 854 (N.D. Ill. 1999) (plaintiffs/assignee created a rebuttable presumption that a third party copyright claimant was the owner of the copyright via the registration certificate and  the defendant failed to introduce any factual evidence to counter the registration certificate); *Smith v. Casey*, 741 F.3d 1236, 1241 (11th Cir. 2014) (explaining that § 501(b) provides standing to both the legal and beneficial owner of a copyright interest and authorizing one to rely on a copyright registration issued to the other.)

### 2.    Defendant Infringed DISH's Copyrights.

Copyright infringement requires "copying of constituent elements of the work that are original." *Feist*, 499 U.S. at 361.  Copying means to violate an exclusive right granted to copyright owners in 17 U.S.C. § 106, including to distribute or publicly perform. *Arista Records LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010).

Defendant created, managed, and operated ZemTV.  (Dkt. 10 ¶ 11.)  Defendant retransmitted the Protected Channels through ZemTV.  (*Id.* ¶ 12.)  In particular, Defendant captured live broadcast signals of the Protected Channels, transcoded these signals into a format

useful for streaming over the Internet, and transferred the transcoded content to computer servers controlled and maintained by Defendant.  (*Id.* ¶ 11.)   The Protected Channels were then retransmitted to ZemTV users in the United States.  (*Id.* ¶¶ 12-13.)  As a result, Defendant directly infringed DISH's exclusive rights to distribute and publicly perform the works airing on the Protected Channels through ZemTV.  (*Id.* ¶¶ 20-21.)

These well-pleaded allegations in DISH's complaint establish that Defendant infringed DISH's copyrights in works airing on the Protected Channels, thus satisfying the second element of DISH's copyright infringement claim.  *See Am. Broad. Cos. v. Aereo, Inc.*, 134 S.Ct. 2498, 2506-11 (2014) (holding that provider of centralized equipment used to stream broadcast programming to its subscribers infringed content owners' right of public performance); *Shava*, Dkt. 120 at 9 (same); *China Central Television v. Create New Tech. (HK) Ltd.*, No. 15-01869 MMM, 2015 WL 3649187, at *8 (C.D. Cal. June 11, 2015) (same); *DISH Network L.L.C. v. Lool Tech Co., Ltd.*, No. 4:16-cv-01771, Dkt. 25 at 1 (S.D. Tex. Mar. 17, 2017) (same); (App. at 402, 425).

Default judgment should be granted on Count I for direct copyright infringement.  *See TV Net*, 2014 WL 6685351, at *4 (granting default judgment and finding copyright infringement based on allegations that defendants retransmitted copyrighted programs via streaming services); *Shava*, Dkts. 120 at 9, 124 (same); *Lool Tech*, Dkt. 25 at 1; (App. at 402, 410-411, 425).

**D.    Statutory Damages Should be Awarded for Copyright Infringement.**

The Copyright Act allows for recovery of the copyright owner's actual damages plus any additional profits of the infringer, or statutory damages.[2]  *See* 17 U.S.C. § 504(a).  DISH elects statutory damages and moves the Court to award damages for its thirteen registered, copyrighted works, as requested in the complaint.  (App. at 307-332, 5-6 ¶ 7; Dkt. 10 ¶¶ 10, B.)

---

[2] Attorneys' fees and costs are also recoverable, but DISH is not seeking such a recovery in this case.  *See* 17 U.S.C. § 505.

1.      **Defendant Engaged in Massive Copyright Infringement.**

Defendant infringed DISH's copyrights on a massive scale by retransmitting the Protected Channels without authorization on ZemTV. Defendant transmitted the Protected Channels on ZemTV for at least 16 months from February 2016 through June 2017.  (App. at 334, 28-305, 4-6 ¶¶ 2, 6, 8; App. at 462-466, 458-460 ¶¶ 4-6.)  Monitoring by an enforcement expert established that Defendant continually retransmitted the Protected Channels, including 855 documented instances.  (App. at 462-466, 458-460 ¶¶ 4-6.)  The number of individual works aired on the Protected Channels is more substantial.

Most of the copyrighted works aired on the Protected Channels are unregistered non-United States works, for which DISH's monetary remedy is limited to actual damages and the disgorgement of a defendant's profits.  *See* 17 U.S.C. §§ 412, 504.  The actual damages that DISH sustained are difficult to quantify for the reasons stated in Part III.E.1 discussing permanent injunctive relief, and Defendant's refusal to participate in this case has prevented DISH from obtaining evidence of his profits.  Consequently, the damages request is limited to registered works, which allow for recovery of statutory damages.

DISH owns copyrights in at least thirteen works registered with the United States Copyright Office (the "Registered Works").  (App. at 307-332, 5-6 ¶ 7; Dkt. 10 ¶ 10.)  Each work was registered within 3 months of its first publication.  (*See* App. at 307-332.)  As a result, the registrations were timely for purposes of awarding statutory damages.  *See* 17 U.S.C. § 412(2) ("[N]o award of statutory damages . . . shall be made for . . . any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.").

The Registered Works are episodes in television series that air on a Protected Channel. (Dkt. 10 ¶ 10; App. at 5-6 ¶ 7.)  Defendant is deemed to have infringed the copyrights in the Registered Works by virtue of his default. *See Nishimatsu,* 515 F.2d at 1206. In addition, video evidence and monitoring establish that the Registered Works aired on ZemTV.  (*See* App. at 334, 307-332, 5-6 ¶¶ 7-8 (showing dates of publication are after the date Defendant began retransmitting

the Protected Channel); App. at 462-466, 458-460 ¶¶ 5-6 ("The Protected Channels were observed at various times and days of the week, demonstrating that the Protected Channels were generally retransmitted 24 hours per day, 7 days per week.")).  DISH requests statutory damages for each of the thirteen Registered Works.

> **2.    Statutory Damages Should be Awarded at $150,000 for Each of the Thirteen Registered Works.**

Although Defendant committed massive copyright infringement over at least a 16 month period, infringing hundreds if not thousands of works, DISH seeks statutory damages for a small sample of the works infringed at the maximum statutory amount.

Statutory damages up to $150,000 per work may be awarded for willful infringement.  17 U.S.C. § 504(c).  All relevant factors are considered when fixing the amount of statutory damages, which in this case includes the fact that Defendant "knew, had reason to know, or recklessly disregarded the fact that [his] conduct constituted copyright infringement," Defendant "[is] apparently impervious to either deterrence or rehabilitation," and Defendant "[has] a history of copyright infringement."  *Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co.*, 74 F.3d 488, 496 (4th Cir. 1996).  Statutory damages of $150,000 for each of the thirteen Registered Works, for a combined total of $1,950,000, are appropriate in this case.

Defendant willfully infringed DISH's copyrights.  (Dkt. 10 ¶ 22.)  An infringement is willful if the defendant "knows his actions constitute an infringement."  *Broadcast Music, Inc. v. Xanthas, Inc.*, 855 F.2d 233, 236 (5th Cir. 1998).  Defendant's willfulness is shown from advising ZemTV users that the sources of the works retransmitted on ZemTV "are bound to go down, taken away, be secured and [have] maintenance issues so [ZemTV] is not guaranteed [to] run 24/7; for that you would need [a] proper TV subscription." (Dkt. 10 ¶ 13.)  "Willfulness may [also] be inferred if notice of a valid copyright was given prior to infringement."  *Malaco Inc. v. Cooper*, No. 300CV2648P, 2002 WL 1461927, at *4 (N.D. Tex. July 3, 2002) (*citing Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1227 (7th Cir. 1991).

Defendant had actual knowledge of his infringement.  Between August 9, 2016 and May 11, 2017, service providers associated with ZemTV were provided with 100 notices demanding the removal of the Protected Channels.  (Dkt. 10 ¶ 16; App. at 28-305, 5 ¶ 6.)  A notice of infringement was also sent to Tvaddons, which Defendant used to distribute ZemTV.  (Dkt. 10 ¶¶ 13, 16; App. at 18-21, 24-25 (Request 20), 5 ¶ 5.)  The notices of infringement were forwarded to Defendant.  (Dkt. 10 ¶ 16; App. at 24-25 (Request 21), 5 ¶ 5.)

When service providers terminated their services to Defendant or took down the infringing streams of television channels, Defendant would move or switch sources to restore retransmission of the Protected Channels from different locations.  (Dkt. 10 ¶ 16; *see also* App. at 28-305.)  Defendant retransmitted the Protected Channels without authorization after receiving the notices of infringement.  (App. at 462-466, 458-460 ¶¶ 4-6.)

Defendant indisputably had actual knowledge that his conduct constituted copyright infringement, and is therefore a willful copyright infringer subject to maximum statutory damages.  *See Superior Form Builders,* 74 F.3d at 497 (4th Cir. 1996) (upholding award of maximum statutory damages for willful copyright infringement and taking into account that defendant had notice of his infringement).

Additional factors such as "the deterrent effect on the infringer and on third parties, expenses saved and profits gained from the infringement, and the infringer's state of mind in committing the infringement" can also support an award of statutory damages of up to $150,000 per work. *Id.* at *4-5. Defendant used ZemTV to distribute the Protected Channels on a 24 hour per day, 7 day per week basis, and did so for at least 16 months.  Defendant likely would not have continued offering the Protected Channels on ZemTV if it was not highly profitable.  Considering Defendant does not pay licensing fees for the Protected Channels and instead engages in copyright infringement, it may be inferred that ZemTV generated substantial profits.  The exact amount of profits that Defendant received and number of persons using ZemTV is not available because Defendant chose to default rather than defend this action, thereby frustrating attempts at obtain discovery from him.

9

Defendant's infringement caused DISH to suffer lost subscription revenues, lost market share, and price erosion, which are inherently difficult to calculate.  (*See* Part III.E.1.)  It would cost a consumer approximately $95 per month to subscribe to DISH and receive all the Protected Channels that are licensed and available on DISH's satellite service.  (App. at 469-470 ¶¶ 4, 7.)  Thus, each user of ZemTV potentially deprived DISH of substantial revenues. Defendant's unauthorized retransmission of the Registered Works contributed to DISH's loss because the Registered Works aired on a Protected Channel.  (App. at 334, 307-332, 5-6 ¶¶ 7-8; Dkt. 10 ¶ 10.)

Defendant should not be rewarded for his failure to defend this case, which is effectively precluding any attempt at calculating actual damages and profits.  *Teri Woods Publ'g, L.L.C. v. Williams*, No. 12-4854, 2013 WL 6179182, at *4 (E.D. Pa. Nov. 25, 2013) (awarding maximum statutory damages against copyright infringers, without "evidence of Defendants' profits, Defendants' costs avoided or Plaintiffs' lost profits," where defendants failed to answer complaint or participate in any way).

Defendant's clear willfulness and the strong need for deterrence, as shown by ongoing infringement in the face of numerous notices of infringement and intent to operate his service on the basis of stealing others' intellectual property, justifies an award of $150,000 per work.  *See Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1195 (9th Cir. 2001) (statutory damages of $31.68 million were not excessive in case of willful copyright infringement, as shown by the defendant continuing to broadcast programming after the case was filed); *China Central*, Dkt. 158 at 33-34, 44 (granting default judgment and awarding $30 million in statutory damages for copyright infringement); *Shava*, Dkts. 120 at 12, 124 (awarding $150,000 for each of 171 registered works totaling $25,650,000 for operating a streaming service); *Lool Tech*, Dkt. 25 at 2-3 ¶ 1 (awarding $150,000 for each of 7 registered works totaling $1,050,000 for operating a streaming service); (App. at 368-369, 379, 405, 410, 426-427 ¶ 1).  DISH should be awarded statutory damages of $1,950,000, which is $150,000 for each of its thirteen Registered Works.

E.     **DISH Should be Awarded Permanent Injunctive Relief.**

The Copyright Act authorizes the Court to "grant . . . final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). A permanent injunction is appropriate where the plaintiff shows: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Each requirement for a permanent injunction is satisfied here.

1.     **DISH's Irreparable Harm and Money Damages are Inadequate.**

Reputational injury and lost profits, which are difficult to calculate, each constitute irreparable harm. *See Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1056 (5th Cir. 1997) (finding irreparable harm based upon potential damage to reputation); *Fl. Businessmen v. City of Hollywood*, 648 F.2d 956, 958 n.2 (5th Cir. 1981) ("A substantial loss of business may amount to irreparable injury if the amount of lost profits is difficult or impossible to calculate.").

DISH contracted with Networks granting DISH the exclusive right to transmit the Protected Channels to subscribers in the United States. (Dkt. 10 ¶¶ 9-10; App. at 469 ¶ 4.) DISH offers the Protected Channels to its subscribers for a fee. (Dkt. 10 ¶ 8; App. at 470 ¶ 7.) DISH loses revenues and market share when users receive the Protected Channels through ZemTV, which is provided free compared to purchasing the channels from DISH. (Dkt. 10 ¶ 23; App. at 470-471 ¶¶ 8, 10.) Quantifying DISH's lost revenues is impractical as the number of customers that would have selected or otherwise stayed with DISH cannot be easily determined. (App. at 470-471 ¶¶ 8, 10.) Defendant's copyright infringement, if allowed to continue, will lead to accumulating losses that are increasingly difficult to calculate.

DISH is irreparably harmed by subscriber loss and reduction in market share resulting from ZemTV. *See Shava*, Dkt. 120 at 13 (finding irreparable harm and monetary damages are inadequate because defendants are liable for copyright infringement and plaintiffs have alleged the

difficulty of determining the extent of the harm from the infringements); *China Central*, 2015 WL 3649187, at *13 ("Defendants' conduct has caused irreparable harm because it has materially reduced the number of individuals who subscribe to authorized U.S. platforms for [plaintiffs'] programming, causing lost market share."); *Warner Bros. Entm't, Inc. v. WTV Sys., Inc.*, 824 F. Supp. 2d 1003, 1013 (C.D. Cal. 2011) (enjoining unlawful streaming and finding "the loss of revenue to Plaintiffs and their licensees, which is already significant, will continue to increase, and constitutes irreparable injury"); (App. at 406).

Second, Defendant's unauthorized retransmission of the Protected Channels irreparably harms DISH by damaging its business reputation and goodwill. ZemTV is not subject to DISH's quality assurance and security protocols and is plagued by interruption or downtime and poor picture quality, which harms DISH in the eyes of consumers that mistakenly believe the Protected Channels on ZemTV originate from or are approved by DISH or Networks, or incorrectly assume this is the same level of quality received from a legitimate service such as that provided by DISH. (App. at 471-472 ¶¶ 11-12); *See China Central*, 2015 WL 3649187, at *13 ("[D]efendant's infringing conduct has caused irreparable harm because it impairs plaintiffs' brand, reputation, and goodwill by associating their programming with poor quality transmissions and viewing experiences on [defendants'] device."); *WTV*, 824 F. Supp. 2d at 1012-14 (finding irreparable harm for reasons that include sub-optimal viewing experience and risk of customer confusion associated with defendant's unauthorized video streaming service).

Finally, Defendant may not be financially able to compensate DISH for the damages caused to date or losses incurred in the future, and therefore Defendant's infringement causes irreparable harm to DISH for which monetary damages alone are not an adequate remedy. *Fox Television Stations, Inc. v. BarryDriller Content Sys., PLC*, 915 F. Supp. 2d 1138, 1147 (C.D. Cal. 2012) (finding irreparable harm based in part on defendants' likely inability to satisfy statutory damages arising from their unauthorized retransmission of television programs); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1217 (C.D. Cal. 2007) (finding irreparable harm under similar circumstances).

12

### 2.     The Balance of Equities and Public Interest Favor an Injunction.

DISH will be irreparably harmed without an injunction.  An injunction would only require that Defendant forego illegal conduct, which is not entitled to any weight in an equitable balancing of factors.  *Lakedreams v. Taylor*, 932 F.2d 1103, 1110 n.12 (5th Cir. 1991) ("Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration."); *Apple Computer*, *Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983) (holding injunction may issue despite potentially "devastating effect" on defendant's business because an infringer is not "permitted to construct its business around its infringement").

Permanently enjoining Defendant will advance the public interest by protecting the copyrighted works airing on the Protected Channels, maintaining the incentive for Networks to produce these works and for DISH to license them.  *See Shava*, Dkt. 120 at 13 ("[I]t is in the public interest to uphold the exclusive rights of the copyright owner."); *China Central*, 2015 WL 3649187, at *14 (Any "interest the public may have 'in receiving copyrighted content for free is outweighed by the need to incentivize the creation of original works'") (quoting *Grokster*, 518 F. Supp. 2d at 1222); (App. at 406).

### 3.     The Court Should Order Third Party Service Providers to Cease Providing Services Supporting Defendant's infringement.

Defendant repeatedly used third party service providers to retransmit the Protected Channels.  (App. at 28-305, 5 ¶ 6, Ex. 5; App. at 462-466, 458-460 ¶¶ 4-6.)  Disabling the computer servers will assist in at least temporarily preventing Defendant from retransmitting the Protected Channels.  (Dkt. 10 ¶ 16.)  Defendant also used service providers including Twitter, Facebook, GitHub, Google, and Microsoft to promote and support ZemTV.  (Dkt. 28-3, Ferguson Decl. ¶ 13 (b-f)).

Courts have enjoined third parties who received actual notice of a permanent injunction from providing services in connection with copyright infringement.  *See China Central*, Dkt. 192 at ¶¶ 16-17 (ordering third party service providers to cease providing web, server, file hosting, data

center and colocation, primary and backup storage, back-end, traffic routing, bandwidth, content delivery networks, domain name server systems, search-based online advertising, domain name registration privacy protection, social media, user generated and online content, and data security services); *Lool Tech*, Dkt. 25 at ¶ 3 (ordering third party service providers to cease providing electronic storage, computer server, website hosting, file hosting, domain hosting, domain name registration, content delivery or acceleration, or social media services); *Times Content Limited v. Doe*, No. 4:17-cv-01287, Dkt. 10 at ¶ 2 (S.D. Tex. May 5, 2017) (ordering third party service providers to suspend all services to infringing websites); *Showtime Networks Inc. v. Doe*, No. 2:15-cv-03147-GW-MRW, Dkt. 20 at ¶ 2 (C.D. Cal. Apr. 30, 2015) (same); *Warner Bros. Entm't, Inc. v. Doe*, No. 14-cv-3492, Dkt. 27 at 6-7 (S.D.N.Y. Oct. 3, 2014) (same); *Shava*, Dkts. 136 at 6, 138 at 2 (enjoining third party service providers and the affiliated computer servers from providing services to the defendants that support their infringing activity); (App. at 390-391, 418, 423, 428, 433-434, 440-441, 449-450); *see also Arista Records, LLC v. Tkach*, No. 15-cv-3701(AJN), 122 F. Supp. 3d 32, 36-38 (S.D.N.Y. 2015) (holding non-party service providers must comply with injunction, finding "courts that have addressed comparable technological services have similarly held that they fall within an injunction's reach if those services are knowingly used to facilitate injunction violations") (citing cases).

A proposed permanent injunction has been filed, which is similar to the injunctions entered in analogous cases.  *See China Central*, Dkt. 192; *Lool Tech*, Dkt. 25; (App. at 286-392, 427-428).

## IV.    Conclusion

The Court should grant this motion and hold Defendant liable for damages in the amount of $1,950,000 and enter a permanent injunction, which is necessary to protect DISH's copyrights from further infringement.

Dated:  September 7, 2018                        Respectfully submitted,

                                                **HAGAN NOLL & BOYLE LLC**

By:  s/ Stephen M. Ferguson
                   Stephen M. Ferguson (attorney-in-charge)
                   Texas Bar No. 24035248
                   Southern District of Texas Bar No. 614706
                   Two Memorial City Plaza
                   820 Gessner, Suite 940
                   Houston, Texas 77024
                   Telephone: (713) 343-0478
                   Facsimile: (713) 758-0146

                   Joseph H. Boyle (of counsel)
                   Texas Bar No. 24031757
                   Southern District of Texas Bar No. 30740

                   **Counsel for Plaintiff DISH Network L.L.C.**

15