# EXHIBIT C

EXHIBIT C
Appendix Page 467

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DISH NETWORK L.L.C., | § § | |
| Plaintiff, | § § | Civil Action No. 4:17-cv-01618 |
| v. | § § § | |
| SHAHJAHAN DURRANI, d/b/a ZemTV, and ADAM LACKMAN, d/b/a www.tvaddons.ag, www.tvaddons.org, www.streamingboxes.com, and www.offshoregit.com | § § § § § § | |
| Defendants. | § § | |

**Declaration of Izabela Slowikowska**

I, Izabela Slowikowska, of Englewood, Colorado, declare as follows:

1. I make this declaration based on personal knowledge and, if called upon to testify, would testify competently as stated herein. This declaration is made in support of DISH's motion for default judgment against Shahjahan Durrani ("Defendant").

2. I have been employed by DISH Network L.L.C. ("DISH") since 2001 and currently serve as Vice President, International Business. I previously held the position of Vice President, International Programming with DISH. In these roles, and through other positions I held with DISH going back to 2010, I have been responsible for various aspects of DISH's international channel business, including the acquisition of programming rights, marketing, sales, and operations.

3. DISH is the fourth largest pay-television provider in the United States, serving approximately 13.1 million subscribers nationwide through the use of satellite and Over-the-Top

EXHIBIT C
Appendix Page 468

("OTT") Internet delivery services. I was involved in expanding the international programming on DISH's satellite platform to over 300 channels in a number of foreign languages (including Arabic), and the launch of DISH's OTT Internet-delivered service called "DishWorld," which is now known as "Sling International."

4. DISH entered into signed, written agreements for the 21 channels identified as the "Protected Channels" in the amended complaint. DISH was granted the exclusive license and right to distribute and publicly perform in the United States all programming aired on the Protected Channels, by means including satellite, IPTV, and OTT. DISH's exclusive rights as to the Protected Channels are currently in effect.

5. From reviewing the findings of Nagra, including the declaration of Pascal Metral, I am informed and believe that Defendant routinely transmitted the Protected Channels to users of his ZemTV service (the "Service") within the United States. Nagra observed the Protected Channels being transmitted on Defendant's Service during time periods in which DISH held the exclusive right to distribute and publicly perform the works that aired on the Protected Channels in the United States.

6. Defendant was not authorized by DISH to transmit the Protected Channels or the works comprising the Protected Channels at any time or in any manner. Therefore, the transmission of the Protected Channels on Defendant's Service infringed DISH's exclusive right to distribute and publicly perform the works that aired on the Protected Channels. Defendant's infringement irreparably harms DISH by causing DISH to lose subscription revenues and market share and by damaging DISH's business reputation and goodwill. The harm to DISH will continue to accrue unless Defendant's unauthorized transmission of the Protected Channels is permanently enjoined.

EXHIBIT C
Appendix Page 469

7. DISH provides the Protected Channels to its satellite television subscribers in Hindi and Urdu language packages that require the purchase of a domestic package (e.g., Flex Pack, America's Top 120, America's Top 200, or America's Top 250), an International Basic Package, or Chinese Basic Package. The price for the International Basic Package or the Chinese Basic Package is $15 per month per package, while domestic package prices start at $22.99 per month. The minimum cost for a subscriber to DISH's satellite service to receive all the Protected Channels, when considering the Hindi and Urdu packages and à la carte options, is an additional $79.98 per month for a 2-year plan. DISH also provides some of the Protected Channels to subscribers of its OTT service Sling International, in the Urdu Super, Urdu Hindi, and Hindi packages, which cost $25 -$30 per month for each month-to-month plan. Accordingly, DISH loses subscription revenue whenever persons receive the Protected Channels using Defendant's Service, rather than subscribing to the Protected Channels through DISH.

8. DISH experienced a decrease in subscribers to its Hindi and Urdu language packages on its satellite service during the time that Defendant provided the Protected Channels on his Service, as identified in the Nagra reporting, in terms of cancellations by existing DISH subscribers and a reduced number of new activations. The loss of subscribers is due at least in part to Defendant's unauthorized transmission of the Protected Channels. Quantifying DISH's lost revenue and market share resulting from Defendant's infringing activity is impractical because the number of customers that are receiving the Protected Channels through Defendant's Service, and would have otherwise selected or stayed with DISH and for what length of time, cannot be easily determined.

9. Moreover, DISH does not sub-license the Protected Channels or the works that aired on the Protected Channels to other content providers. Rather, the value to DISH lies in

EXHIBIT C
Appendix Page 470

having the exclusive rights to distribute and publicly perform the works aired on the Protected Channels, which in turn enables DISH to attract new subscribers and retain existing subscribers for its own satellite and OTT platforms. Consequently, it is not possible to compute DISH's actual damages caused by Defendant's unauthorized transmission of the Protected Channels based upon a hypothetical license fee model.

10. Likewise, Defendant's unauthorized transmission of the Protected Channels results in price erosion that further reduces the subscription revenues received by DISH. For example, DISH reduced the price of the "Hindi Mega" package by more than 50%, from $54.99 to a promotional price of $24.99 per month. DISH made these downward price adjustments or discounts to its packages containing the Protected Channels to attract new subscribers and retain existing subscribers that might otherwise resort to infringing services such as the Service provided by Defendant.

11. As a final point, Defendant's unauthorized transmission of the Protected Channels damages the business reputation and goodwill of DISH. DISH established a reputation as a leading provider, and in some cases the exclusive provider, of international channels in the United States. DISH transmits the Protected Channels in a high-quality format to its subscribers using state-of-the-art satellite and OTT platforms that are dependable, secure, and maintain viewer satisfaction. Defendant's unauthorized transmission of the Protected Channels through the Service takes place beyond the control of DISH and its quality assurance and security protocols, thereby harming DISH as explained below.

12. DISH suffers reputational harm because Defendant's transmission of the Protected Channels is substandard in comparison to the content delivery services provided by DISH. Based upon the analysis performed by Nagra, which extensively monitored the ZemTV service, there

EXHIBIT C
Appendix Page 471

were frequent interruptions or downtime associated with Defendant's unauthorized transmission of the Protected Channels.  At times the Protected Channels were completely unavailable, while in other instances there was freezing or glitches in the transmissions such that the Protected Channels did not display properly or were lacking in picture quality.  Defendants' unauthorized transmission of the Protected Channels in this manner harms DISH in the eyes of consumers that mistakenly believe the transmission originates from or is otherwise approved by DISH, or incorrectly assume that this level of performance is standard among Internet-based platforms that offer the Protected Channels such as DISH's Sling International service.  Calculating the reputational damage to DISH caused by Defendant's unauthorized transmission of the Protected Channels is inherently difficult, if not impossible.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 6, 2018

_____
Izabela Slowikowska